UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                            Plaintiff,

                                                                                   Case #13-CR-6065-FPG

v.

                                                                                    DECISION & ORDER

LAVERNE SINGLETARY,

                            Defendant.

---

By text order dated April 30, 2013, this case was referred to United States Magistrate Judge Jonathan W. Feldman, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B). Dkt. #15. The three count indictment in this case alleges that on October 6, 2012, Defendant Laverne Singletary possessed marijuana with the intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), possessed a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1), and possessed a firearm having previously been convicted of a felony in violation of 18 U.S.C. § 922(g). Dkt. #14.

Defendant's motion seeks to suppress tangible evidence, namely the marijuana and a gun, that was seized during the events of October 6, 2012. Dkt. #22. Magistrate Judge Feldman conducted a suppression hearing on October 10 and 11, 2013, where Police Officer Amy Pfeffer and Public Safety Aide Julie Gulino[1] testified. After receiving further submissions from the parties (Dkt. ##38, 41, 42), Magistrate Judge Feldman issued his Report and Recommendation on May 20, 2014, which recommends granting Defendant's motion to suppress the marijuana

---

[1] Defendant's motion papers (Dkt. #26) also seek suppression of the video tape from October 6, 2012, for the alleged failure to record or maintain additional video from that incident. Gulino's testimony was limited to the procedures employed by the Rochester Police Department regarding video recording and retention. Magistrate Judge Feldman recommended the denial of this motion, which Defendant has not objected to. I therefore accept Magistrate Judge Feldman's recommendation regarding the video tape evidence, and the motion to suppress the video tape is DENIED.

and gun that were recovered on October 6, 2012. Dkt. #45. On June 18, 2014, the government timely objected to Magistrate Judge Feldman's Report and Recommendation, Dkt. #52, and the Defendant filed his Memorandum in Support of the Report and Recommendation on June 27, 2014, Dkt. #54.

Since the government has filed objections, this Court must conduct a *de novo* review as to those portions of the Report and Recommendation to which objections have been made. *See* 28 U.S.C. § 636(b)(1)(C). In doing so, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* As part of this review, the Court has considered all of the parties' submissions to date, as well as the transcripts of the suppression hearing. Based upon that *de novo* review, I find no basis to alter, modify or reject Magistrate Judge Feldman's Report and Recommendation.

The facts regarding the events of October 6, 2012 are drawn from the suppression hearing testimony, and are not in dispute. At about 10:45 that evening, Rochester Police Department Officer Amy Pfeffer and Monroe County Probation Officer Robert Masucci were driving on Roth Street in the City of Rochester. They observed the Defendant walking down a public sidewalk, where Officer Pfeffer acknowledges he was not doing anything suspicious. As the officers got closer to the Defendant, Pfeffer observed "a container" that was "a standard size of a beer" that was covered by a "brown paper bag." Pfeffer testified that she "had no idea" what was under the brown paper bag, but that in her experience, brown paper bags are used to cover up alcoholic beverages. Pfeffer further testified that she would have used a spotlight to illuminate anyone on the street because it was a high violence area.

Based upon her observation of a man walking on a public sidewalk with a can sized object covered by a brown paper bag, Pfeffer directed Masucci to stop the Defendant. Pfeffer testified that it was the paper bag that gave her a reason to have the Defendant stopped. The

officers stopped their car, and approached the Defendant on foot. Pfeffer testified that even at the time the officers approached the Defendant, she did not know what was in the Defendants' hand, and further testified that the Defendant did not drink from the object, or do anything else that would raise their suspicion.

Pfeffer ordered the Defendant to stop. Defendant replied, "Who me?" and walked away from the officers. Masucci then reached out in an effort to stop the Defendant, by placing his right hand on the Defendant's right shoulder. The Defendant then "threw the can behind him and then he pushed Officer Masucci's hand off of him and then proceeded to run." The can spilled on Pfeffer, who now, for the first time, could smell beer. The officers gave chase, and a short time later, the Defendant lost his footing on some rocks, and both the officers and the Defendant fell to the ground. The Defendant was taken into custody, and the officers recovered a handgun from the ground where the Defendant had fallen. The Defendant was then searched, and the officers recovered thirteen bags of marijuana from a pocket in the Defendant's hoodie.

There are two separate determinations made by Magistrate Judge Feldman that the government objects to. First, Magistrate Judge Feldman found that the initial stop and seizure of the Defendant was not supported by reasonable suspicion, and was therefore improper. Second, Magistrate Judge Feldman found that the evidence seized as a result of the illegal stop should be suppressed under the exclusionary rule.

Turning first to the issue of reasonable suspicion, it is well settled that law enforcement may briefly seize an individual if that officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981); *see also Terry v. Ohio*, 392 U.S. 1, 30 (1968). A mere hunch is insufficient to create reasonable suspicion, *Terry*, 392 U.S. at 27, nor can a stop be based upon "inchoate suspicion." *United States v. Bayless*, 210 F.3d 116, 132-33 (2d Cir. 2000) (internal quotation

3

omitted). At the same time, reasonable suspicion depends on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695 (1996). In the end, courts "look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

In this case, I agree with Magistrate Judge Feldman that there was insufficient information to form a reasonable belief that criminal activity was afoot, and therefore, the initial stop of the Defendant was illegal. To be sure, the officers in this situation guessed correctly, in that they were able to later confirm that Defendant was indeed carrying an open container of beer in public. However, the stop was initially based upon nothing more than a hunch. The government argues that the observation of an individual on a public street with a can sized object covered by a paper bag, which an officer believes to be alcohol based on their training and experience, is sufficient to establish reasonable suspicion. Notably, the government has not cited any cases wherein those facts were found to establish reasonable suspicion to detain an individual, nor am I aware of any. To the contrary, I find such facts to simply establish a hunch, rather than reasonable suspicion which could justify a brief investigatory detention. While the officers could have attempted to speak with the Defendant and perhaps verify their hunch – after which they could have had a sufficient basis to detain the Defendant – they chose to detain him first, without sufficient justification. That stop – where the officer placed his hand on the Defendant's shoulder – is undoubtedly a seizure of the Defendant. *See California v. Hodari D.*, 499 U.S. 621, 624 (1991) ("the mere grasping or application of physical force with lawful authority, whether or not it succeeded in subduing the suspect" is sufficient for a seizure.)

The government's second objection is to Magistrate Judge Feldman's finding that the evidence derived from the initial seizure should be suppressed. As Magistrate Judge Feldman

4

pointed out, although the initial stop of the Defendant has been found to be unjustified, the analysis does not end there. Rather, the question is whether the evidence recovered is tainted by the illegal detention, or whether a separate intervening act provides a legitimate basis for the recovery of the evidence. While I won't restate Magistrate Judge Feldman's discussion of Justice Scalia's *dicta* in *Hodari D.* and the timing of the events that took place in this case, I agree with his analysis. While, like *Hodari D.*, this is a case where the officers illegally directed an individual to stop and the individual refused to comply, the distinguishing factor is that the officers here actually *seized* the Defendant by using force, and *after* the illegal seizure, the challenged evidence was obtained. It was not until *after* the officers seized the Defendant that he spilled the container of beer, after which the Defendant subsequently broke free from the officers and ran. On the other hand, *Hodari D.* "[did] not involve the application of any physical force; Hodari was untouched by [the officer] at the time he discarded the cocaine." *Hodari D.*, 499 U.S. at 625. It is also well settled that a defendant's flight alone does not justify the seizure of a defendant. *United States v. Sharpe*, 470 U.S. 675, 706 (1985) ("Of course, flight alone cannot give rise to probable cause; it must be coupled with pre-existing reasonable and articulable suspicion.") (citation omitted).

In many ways, the government's argument to save the illegally obtained evidence creates a no-win scenario for the Defendant: if he does not yield to an illegal detention, the officers can then stop him for avoiding that original detention, and the initial reasonable suspicion determination – a well rooted and established principle of our jurisprudence – is made irrelevant. Or in other words,

> If we accepted the government's argument that such a simple refusal to comply could create reasonable suspicion where none existed before, we would create a truly paradoxical class of individuals: individuals who cannot be stopped by officers, but who can be stopped if they refuse to stop. Such a conclusion would gut the Court's repeated determination that an individual

5

> approached by the police "need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained *even momentarily* without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds." *Florida v. Royer*, 460 U.S. 491, 497–98 (1983) (plurality opinion) (emphasis added) (internal citations omitted); *see also Wardlow*, 528 U.S. at 125. The "more" contemplated by *Royer*, sufficient to give rise to reasonable suspicion, does not exist in this case.

*United States v. Freeman*, 735 F.3d 92, 102-3 (2d Cir. 2013).

The firearm and the marijuana in this case were recovered because of an illegal seizure that taints their recovery, and are therefore fruits of the poisonous tree that must be suppressed. Based on the foregoing, the Court accepts and adopts the Report and Recommendation filed by United States Magistrate Judge Jonathan W. Feldman (Dkt. #45) in its entirety, and Defendant's motion to suppress evidence, namely the firearm and marijuana recovered on October 6, 2012, (Dkt. #22) is GRANTED.

IT IS SO ORDERED.

Dated: August 8, 2014
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge